

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

*Attorneys at Law*

WILMINGTON
RODNEY SQUARE

NEW YORK
ROCKEFELLER CENTER

Melanie K. Sharp
P 302.571.6681
F 302.576.3333
msharp@ycst.com

November 5, 2012

**BY E-FILE AND HAND DELIVERY**
The Honorable Richard G. Andrews
United States District Court for the District of Delaware
844 N. King Street, Unit 9, Room 6325
Wilmington, DE 19801-3555

**REDACTED - PUBLIC VERSION**

RE: *Novartis Pharmaceuticals Corporation, et al. v. Watson Laboratories, Inc., et al.*, C.A. No. 11-1112 (RGA)

Dear Judge Andrews:

Defendants Watson Laboratories, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. ("Watson") submit this letter to bring to the Court's attention several disputes regarding the continued deficiencies in Plaintiffs' Responses to Watson's Discovery Requests.

**A. Plaintiffs' Failure to Provide Complete Infringement Contentions (Interrogatory No. 1) and to Produce Related Testing Documents (Document Request Nos. 4-7 and 9).** Plaintiffs filed this lawsuit accusing Watson of infringement in November 2011. Since the beginning of the litigation, ▮▮▮▮▮ – a critical limitation of all asserted patent claims of the two patents-in-suit, the '023 and the '031 patents. Plaintiffs' Fourth Supplement Response to Interrogatory No. 1 served on October 17th states that ▮▮▮▮▮

Watson wrote to Plaintiffs about these continued deficiencies on October 18th. *See* Ex. 2. In a responsive email, Plaintiffs' counsel said that ▮▮▮▮▮ *See* Ex. 3. During a meet and confer October 23rd, Watson's counsel specifically asked ▮▮▮▮▮ Watson then asked whether it is Plaintiffs' contention that

The Honorable Richard G. Andrews
November 5, 2012



Page 2



*Id.* Plaintiff's counsel refused to answer, *Id.* Watson then asked Each time Plaintiff's counsel refused to answer, *Id.*

Plaintiffs also refused to produce any of the documents that describe the testing and the results on which they are relying in support of their infringement contentions.[1] Those documents are responsive to Watson's outstanding document requests. *See* Ex. 5, Request Nos. 4, 5, 6, 7 and 9. Without this critical information, it is impossible for Watson to analyze Plaintiffs' test data or the methodology used for the testing, it is impossible for Watson to conduct any testing it may need on its own product or Plaintiffs' product, and it is impossible for Watson to conduct any third-party discovery needed to address or respond to Plaintiffs' infringement contentions.

Apparently, Plaintiffs agree that the documents must be produced, but intend to delay that production until they serve expert reports. Watson should not have to wait until expert discovery to review these documents, because they are the only evidence Plaintiffs have in support of their infringement allegations. Moreover, because Plaintiffs are relying on the results of these tests, the documents are not protected by work product immunity. *See E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 24 F.R.D. 416, 421-423 (D. Del. 1959) ("The work which they were doing was scientific work entirely unconnected with any legal matter and far beyond the capacity of most lawyers….It did not become professional legal work so that any work product rule can be invoked in respect of it…"); *see also Sandvik Intellectual Property AB v. Kennametal, Inc.*, No. 10-cv-00654, 2011 U.S. Dist. LEXIS 11104, at *4 (W.D. Pa. Feb. 4, 2011) ("Accordingly, the Court finds that [Plaintiff] may not withhold such information that is merely factual under the umbrella of the work product doctrine.").

Even if the testing documents were previously subject to the work product protection, Plaintiffs have waived that protection by affirmatively asserting that the tests established infringement of the patents-in-suit. As a result, documents related to ALL testing conducted by or on behalf of Plaintiffs are discoverable. *See Tillotson Corp. v. Shijiazhaung Hongray Plastic Prods.*, 244 F.R.D. 683 (N.D. Ga. 2007) ("To the extent that plaintiff relies on that test data to support its infringement claims, fairness dictates that the defendants have access to that information in order to defend the claims made against them."). Watson respectfully requests that the Court order Plaintiffs to provide a full and complete response to Watson's Interrogatory No. 1 and to produce all documents related to the testing of Watson's ANDA products.

**B.     Plaintiffs Response to Interrogatory No. 6 is Incomplete.** Watson's Interrogatory No. 6 requests that Plaintiffs "identify all studies, tests, experiments, trials or other work utilized by or on behalf of Plaintiffs for determining the suitability, effectiveness, or

---

[1] The parties are in the process of negotiating a stipulation that addresses the production of these testing documents. The terms of the stipulation have not been finalized, but if the parties reach agreement on the terms of the stipulation and the court approves, then it would not be necessary for the Court to address this issue at the Nov. 7th Conference.

The Honorable Richard G. Andrews  
November 5, 2012                                                             Page 3

effective amount of any antioxidant in a rivastigmine transdermal system, including the Exelon® Patch, and identify all documents concerning such studies, tests, experiments, trial or other work." *See* Ex. 6 at p. 6. Plaintiffs did not provide a substantive answer to this interrogatory but instead relied only on document. *See* Ex. 7 at p. 9. Watson drafted this interrogatory to seek very specific information regarding the type of testing Plaintiffs contend is sufficient to establish that the presence of an antioxidant has a stabilizing effect, and Fed. R. Civ. P. 33(d) does not allow one to avoid providing any substantive response. *See Scripps Clinic and Research Foundation v. Baxter Travenol Labs, Inc.*, 1988 U.S. Dist. Lexis 7495, at *3 (D. Del. 1988) ("respond[ing] by directing the interrogating party to a mass of business records. . .[is an] abuse of the option.") Moreover, even if Defendants were permitted to rely solely on documents for their response to this interrogatory, Plaintiffs have not identified any specific documents from which the information sought by this interrogatory may be obtained as required by Rule 33(d). *Id*

**C. Plaintiffs Refusal to Answer Interrogatory Nos. 7-10.** Plaintiffs' also have not provided any substantive responses to Watson's Second Set of Interrogatories (Nos. 7-10). Plaintiffs objected to all of these interrogatories on the erroneous basis that Watson had exceeded the number of Interrogatories permitted by the Scheduling Order and refused to respond. *See* Ex. 8, Plaintiffs Responses to Watson's Second Set of Interrogatories. The Scheduling Order permits the parties to serve 25 interrogatories and Watson has served a total of only 11 interrogatories. In order to reach and exceed the 25 interrogatory limit, Plaintiffs improperly divided Watson's interrogatories into subparts that strain credulity. *See* Ex. 9 at pp. 2-4. In reality, Watson's Interrogatories do not include such subparts, and the 11 interrogatories served thus far by Watson do not exceed the 25 permitted. *See* Exs. 6 and 7. This is yet another example of Plaintiffs' persistent efforts to avoid providing meaningful discovery, and Watson requests that the Court require Plaintiffs' to fully and completely response to Watson's Interrogatory Nos. 7-10. If the Court should determine that Watson did unintentionally exceed the 25 interrogatory limit, then Watson respectfully request that the Court increase the number of interrogatories permitted per side to permit full and fair discovery.

**D. Plaintiffs Refusal to Produce Samples of Their Products to Watson.** Watson's Second Set of Requests for the Productions of Documents and Things Nos. (46-57) sought samples of Plaintiffs' products and of the components used in manufacturing those products. *See* Ex. 10. Plaintiffs, however, have refused to produce samples of their products to Watson. First, Plaintiffs objected to the requests because they were served "after the completion of sample discovery." *See* Ex. 11. That objection has no merit, because the Court's scheduling order does not provide a separate timeframe for "sample discovery." Plaintiffs then stated that "if Watson can establish the relevance of this Request, Plaintiffs will produce the requested material." *Id*. Watson has explained that [REDACTED]

[REDACTED] *See* Ex. 12, at p. 2. Moreover, if Plaintiffs identify an ingredient or impurity that they assert is acting as an antioxidant in Watson's product, then Watson is entitled to conduct testing of Plaintiffs' product to determine if that ingredient is present in Plaintiffs' product. Plaintiffs have not indicated that they are unable to provide samples and their refusal to do so interferes with Watson's ability to respond to Plaintiffs infringement contentions. Watson requests that the Court instruct Plaintiffs to produce samples to Watson immediately.

The Honorable Richard G. Andrews  
November 5, 2012



Page 4

Respectfully submitted,

/s/ *Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

MKS:mts

cc: Clerk of the Court (by Hand Delivery)  
Michael P. Kelly, Esq. (by e-mail)  
Daniel M. Silver, Esq. (by e-mail)

01:12743255.1

# EXHIBITS 1-12

# REDACTED IN THEIR ENTIRETY