Case 1:11-cv-01077-RGA   Document 190   Filed 11/26/12   Page 1 of 3 PageID #: 1954



McCARTER & ENGLISH
ATTORNEYS AT LAW

November 15, 2012

Public Version filed: November 26, 2012

**VIA CM/ECF & HAND DELIVERY**

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
844 North King Street, Room 6325, Unit 9
Wilmington, DE 19801-3555

Daniel M. Silver
Associate
T. 302.984.6331
F. 302.691.1260
dsilver@mccarter.com

Re: *Novartis Pharmaceuticals Corp. v. Actavis South Atlantic LLC,*
   **1:11-cv-01077-RGA (Consolidated)**

Dear Judge Andrews:

On behalf of Plaintiffs, we write to respond to Watson's November 12, 2012 letter to the Court (D.I. 176).

In representation after representation, Watson has told the Court that its products do not contain an antioxidant. Watson, however, refused to produce adequate samples of its products to Plaintiffs until the Court ordered Watson to do so on June 29, 2012. Plaintiffs have been testing those samples diligently over the last three months. Plaintiffs have also supplemented their interrogatory responses to Watson no less than four times during that period to apprise Watson of their latest infringement contentions.

McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717
T. 302.984.6300
F. 302.984.6399
www.mccarter.com

Plaintiffs have now completed their testing of Watson's products, ████████ ████████████████████████████████████████████████████ and thus literally infringe the patents-in-suit. Plaintiffs also have produced to Watson all of the testing documents on which their testifying experts intend to rely to show that Watson's products infringe. Watson is not entitled to more.

BOSTON

HARTFORD

**1.   Plaintiffs have produced the testing documents
      on which their testifying experts will rely**

NEW YORK

On November 9, 2012, Plaintiffs produced to Watson 199 pages of documents, including lab book entries and instrument scans and outputs, reflecting the testing of Watson's products conducted by Plaintiffs' experts. These are the documents that confirm ████████████████████████████████████████ and that Plaintiffs' testifying experts intend to use to show that Watson's products infringe the patents-in-suit.

NEWARK

PHILADELPHIA

STAMFORD

WILMINGTON

In Watson's words, Watson now has what it needs "to make a critical evaluation of the testing Plaintiffs have presented." Watson has no need for Plaintiffs' other testing documents and will not be prejudiced by them; they are neither a "sword" nor

ME1 14416757v.1

The Honorable Richard G. Andrews
November 15, 2012
Page 2

a "shield" in this suit.  Plaintiffs' testifying experts will not rely on any testing documents other than those produced to Watson on November 9, 2012.  Watson is free to cross-examine those experts on those documents during deposition and trial, and Watson has long had—and continues to have—the opportunity to conduct its own testing of its own products to try to refute the testing Plaintiffs have presented.

Further, many of the testing documents Watson now seeks are irrelevant.  Among other things, Watson seeks documents concerning testing conducted ████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

### 2. **All other testing documents are work-product privileged**

All documents concerning the testing of Watson's products by or on behalf of Plaintiffs were prepared at the request of Plaintiffs' counsel for purposes of this litigation.  To the extent that Watson demands testing documents ***not relied upon*** by Plaintiffs' testifying experts, the law is clear that such documents are work-product privileged.  See F.R.C.P. 26(b)(3); F.R.C.P. 26(b)(4)(D); *Reckitt Benckiser LLC v. Amneal Pharms., LLC*, No. 11-6609, 2012 WL 2871061 at *6 (D.N.J. Jul. 12, 2012) ("to the extent Plaintiffs elect to test Defendant's ANDA samples in order to meet their burden of proving infringement, the Court finds that the testing procedures and protocol fall within the work-product privilege.  It is undisputed that such testing described above, if conducted and utilized by Plaintiffs' testifying or non-testifying expert, will be at the direction of Plaintiffs' counsel, for purposes of 'trial by or for ... [Plaintiffs],' and not within 'the ordinary course of business.'") (internal citations omitted); *3M Co. v. Kerr Corp.*, No. 07-87, 2007 WL 5462430 at *2 (W.D. Wis. Mar. 12, 2007) ("I will not order 3M to produce information about scientific testing performed at the request of 3M's counsel that 3M (and its experts) will not be relying upon to provide infringement.  Such testing qualifies as work product to which no exceptions (waiver or substantial need) apply."); *Tillotson Corp. v. Shijiazhaung Hongray Plastic Prods.*, 244 F.R.D. 683, 693 (N.D. Ga. 2007) ("recognizing that the information was prepared in anticipation of litigation, this court will not require the plaintiff to disclose the test data unless it relies on that information to support its infringement claims or will use that information in the future"); *MeadWestvaco Corp. v. Rexam PLC*, No. 10-511, 2011 WL 2938456 at *3-8 (E.D. Va. Jul. 18, 2011) (test data, results and protocols generated in anticipation of litigation were protected under work-product privilege); *Novartis Pharm. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001) (infringement testing done at request of counsel and in connection with identifiable litigation was protected under work-product privilege).

The law is equally clear that there cannot be an "implied" or "at issue" waiver of the work-product privilege for any testing documents ***not relied upon*** by a party's testifying experts.  See *3M Co.*, 2007 WL 5462430 at *2 ("I will not order 3M to produce information about scientific testing performed at the request of 3M's counsel that 3M (and its experts) will not be relying upon to provide infringement.  Such testing qualifies as work product to which no exceptions (waiver or substantial need) apply."); *MeadWestvaco Corp.*, 2011 WL 2938456 at *5-6 (implied waiver argument was "without merit" absent any attempt by party to make testimonial use of testing materials); *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 142 F.R.D. 408, 419 (D. Del.

The Honorable Richard G. Andrews
November 15, 2012
Page 3

1992) ("at issue" waiver applies where "counsel attempts to make a testimonial use of these materials") (*quoting United States v. Nobles*, 422 U.S. 225, 239 n.14 (1975)).

Not one of the thirteen cases cited in Watson's November 12, 2012 letter suggests that the doctrine of "implied" or "at issue" waiver applies to testing documents that were prepared at the request of counsel for purposes of litigation, but not relied on by testifying experts. Indeed, not one of those cases even mentions those sorts of documents.[1]

As the Court correctly surmised at the November 7, 2012 discovery conference (11/7/12 tr. at 36:2-22), Watson's demand for "all testing data and related documents, regardless of whether Plaintiffs intend to rely on that data at trial" is contrary to law. It should be denied.

                                                     Respectfully Submitted,
                                                     /s/ *Daniel M. Silver*
                                                     Daniel M. Silver (#4758)

cc:    Watson's counsel of record (via electronic mail)

---

[1] *United States v. Nobles*, 422 U.S. at 239-40 (reliance on defense investigator testimony waived privilege for subject matter in said testimony); *Ideal Elec. Sec. Co. v. Int'd Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) (reliance on attorney billing statements to support claim for indemnification of attorneys' fees waived privilege for said statements); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-4304, 2005 WL 2436662 at *5 (E.D. Pa. Sept. 28, 2005) (defendant did not waive privilege because it elected not to rely on advice-of-counsel defense); *In re Echostar Comm'n Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 1996) (defendant waived privilege because it relied on advice-of-counsel defense); *Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 168 (E.D.N.Y. 2010) (reliance on good-faith-of-counsel defense waived privilege for communications with said counsel); *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1343-44, 1349 (Fed. Cir. 2005) (knowing disclosure of opinion of counsel waived privilege for related document); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 94-96 (W.D.N.Y. 2011) (deposition testimony relying on substance of documents waived privilege over said documents in fraud case); *Hoffman-La Roche, Inc v. Roxane Labs., Inc.*, No. 09-6335, 2011 WL 1792791 at *10-11 (D.N.J. May 11, 2011) (same with respect to patent prosecution documents in patent case); *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982) (privilege waived for documents necessary for a fair evaluation that were withheld from federal grand jury in corporate fraud case); *Weil v. Inv./Indicators Research Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (privilege waived "only as to communications about the matter actually disclosed" in securities case); *Ziner v. Cedar Crest Coll.*, No. 04-3491, 2006 WL 1517387 at *4 (E.D. Pa. May 30, 2006) (denying defendant's motion for partial judgment on plaintiff's gender discrimination complaint); *Remington Arms Co.*, 142 F.R.D. at 419 (defendant did not waive attorney-client or work product privilege in insurance suit); *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942) (witness who confesses all elements of crime may not withhold details).